**[This opinion has been published in *Ohio Official Reports* at 81 Ohio St.3d 72.]**

**CINCINNATI BAR ASSOCIATION *v*. EDWARDS.**

**[Cite as *Cincinnati Bar Assn. v. Edwards*, 1998-Ohio-447.]**

*Attorneys at law—Misconduct—Eighteen-month suspension with final year stayed—Failing to segregate client's funds from own funds and using client's funds without authorization.*

(No. 97-1751—Submitted October 7, 1997—Decided February 18, 1998.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 96-48.

_____

{¶ 1} One of the assets of William Smith's estate was a mortgage note in the amount of $12,238 payable to him by his sister, Gladys Combs. On February 26, 1993, Michael M. Edwards of Cincinnati, Ohio, Attorney Registration No. 0032603, who was engaged to handle the probate of the Smith estate, received $400 on the note, which he gave to Angela Smith, one of Smith's two daughters who were transferees of the note. After he was paid for his probate services, respondent undertook to collect the balance of the note on behalf of Angela Smith and Kim Amos, the other daughter of William Smith. Respondent had no written fee arrangement with Amos or Smith with respect to his services for collection of the note.

{¶ 2} During the period from May 10, 1993 through July 25, 1994, respondent collected $6,900 from Combs on the note and delivered the proceeds to Amos and Smith. On October 11, 1994, respondent received $1,000 on the note, which he failed to pay over to Amos and Smith. From October 20, 1994 through May 24, 1995, respondent received an additional $4,000 on the note, which he retained for his own benefit. After August 1994, respondent delivered no further proceeds to Amos and Smith.

**{¶ 3}** In 1995, respondent received several inquiries from Amos and told her that no additional payments had been made on the note. Despite repeated requests from Combs in 1995, respondent provided no accounting for any of the funds he had received. Respondent, in fact, kept no record at all of the receipts and disbursements on the note.

**{¶ 4}** During the period of these activities, respondent had one bank account, an attorney's trust account, which he used for business and personal matters. On numerous occasions this account was overdrawn.

**{¶ 5}** On June 17, 1996, relator, Cincinnati Bar Association, filed a complaint charging that respondent's actions violated several Disciplinary Rules. A panel of the Board of Commissioners on Grievances and Discipline of the Supreme Court ("board") held a hearing and received stipulations of the parties.

**{¶ 6}** The panel found the above facts and concluded that respondent had violated DR 1-102(A)(4) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), 7-102(A)(5) (knowingly making a false statement of law or fact), 9-102(A) (failure to maintain client funds in a separate identifiable bank account), 9-102(B)(1) (failing to promptly notify a client of the receipt of client funds), 9-102(B)(3) (failing to maintain a complete record of all funds and accounting to the client therefor), 9-102(B)(4) (failing to promptly pay or deliver funds which the client is entitled to receive), 6-101(A)(3) (neglecting an entrusted legal matter), and 7-101(A)(1) (failing to seek the lawful objectives of a client).

**{¶ 7}** The panel heard in mitigation that respondent had no previous disciplinary problems, was distracted by the illness of one of his children during the period in question, recently had a stroke, and was willing to make restitution.

**{¶ 8}** The panel recommended that respondent be suspended from the practice of law for eighteen months, with the final year stayed, during which year the respondent be subject to monitoring by relator, including education in proper office management. Since respondent had already paid $1,000 to Amos and Smith

at the inception of these proceedings, the panel recommended that respondent pay restitution to Amos and Smith only in the amount of $4,000. The board adopted the findings, conclusions, and recommendation of the panel.

_____

*Howard M. Schwartz,* for relator.

*John A. Burlew,* for respondent.

_____

**Per Curiam.**

**{¶ 9}** DR 9-102(A) requires that all funds of a client paid to a lawyer be deposited in a bank account in which no funds of the lawyer are deposited. In this case respondent deposited the funds of his clients in his one and only bank account, and not only failed to maintain any record or accounting of those funds, but also used the funds for his own office and personal expenses. These actions were tantamount to a conversion of the clients' funds.

**{¶ 10}** "There are few ethical breaches which impact more negatively on the integrity of the legal profession than the misuse of a client's funds." *Disciplinary Counsel v. Morton* (1983), 5 Ohio St.3d 206, 208, 5 OBR 420, 423, 450 N.E.2d 275, 277 (collecting cases where the sanction was from one year to indefinite suspension). In *Morton* we imposed a sanction of one-year suspension where the misconduct represented "an isolated incident of mismanagement." *Id.* at 209, 5 OBR at 423, 450 N.E.2d at 278. In *Erie-Huron Counties Joint Certified Grievance Commt. v. Miles* (1996), 76 Ohio St.3d 574, 669 N.E.2d 831, we also imposed a one-year suspension where funds were commingled, even though there may have been no monetary damage to the client. Two decades ago we said that "it has been the consistent practice of this court in recent years to impose a penalty of either indefinite suspension or of disbarment in cases involving commingling of funds." *Akron Bar Assn. v. Hughes* (1976), 46 Ohio St.2d 369, 372-373, 75 O.O.2d 446, 448, 348 N.E.2d 712, 715 (collecting cases where the sanction was indefinite

suspension or disbarment). In *Hughes* we found no mitigating circumstances and imposed an indefinite suspension.

{¶ 11} In this case, because there appear to be some mitigating circumstances, we adopt the findings, conclusions, and recommendations of the board. Respondent is hereby suspended from the practice of law for eighteen months with the final year stayed, during which year the respondent shall be subject to monitoring by relator, including education in proper office management. Moreover, as a condition of his reinstatement, respondent shall make restitution to Amos and Smith in the amount of $4,000 with statutory interest from a date as determined by relator. Costs taxed to respondent.

*Judgment accordingly.*

DOUGLAS, RESNICK, F.E. SWEENEY and PFEIFER, JJ., concur.

MOYER, C.J., COOK and LUNDBERG STRATTON, JJ., dissent.

————————

**COOK, J., dissenting.**

{¶ 12} I respectfully dissent. Because respondent failed to account to his clients for funds received on their behalf and lied to them about what he had collected, this is not a "bad bookkeeping practices" case. It is a case of stealing from clients. This sort of conduct goes to the essence of character and fitness and no amount of "distraction" or health issues should be seen as mitigating. I would, therefore, impose the full eighteen-month suspension.

MOYER, C.J., and LUNDBERG STRATTON, J., concur in the foregoing dissenting opinion.

————————